**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jack LANDE, Defendant–Appellant.**

**Nos. 91–30185, 91–30186.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 8, 1992 *.

Decided June 30, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th    Cir.R. 34–4 and Fed.R.App.P. 34(a).

Gregory A. Jackson, Jackson & Rice, Helena, Mont., for defendant-appellant.

Carl E. Rostad, Asst. U.S. Atty., Great Falls, Mont., for plaintiff-appellee.

Before: BROWNING, WRIGHT and FERNANDEZ, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Jack Lande modified General Instruments Videocipher II descrambler units to enable home satellite dish owners to view scrambled pay television programming without payment. He pled guilty to numerous charges and was sentenced to 35 months in prison.

Before pleading guilty, Lande moved to dismiss charges against him based on the Electronic Communications Privacy Act (ECPA) (also known as Title I or the Wiretap Law), 18 U.S.C. §§ 2510–2521, arguing the ECPA does not apply to piracy of satellite television. The district court denied his motion. Lande's guilty plea reserved his right to appeal the denial. *See* Fed. R.Crim.P. 11(a)(2).[1]

■ The Circuits are divided as to whether the ECPA prohibits modification of descramblers to allow unauthorized viewing of scrambled satellite television. *Compare United States v. McNutt,* 908 F.2d 561 (10th Cir.1990) (holding section 2512 of the ECPA prohibits modification of descramblers) *with United States v. Herring,* 933 F.2d 932 (11th Cir.1991) *and United States v. Hux,* 940 F.2d 314 (8th Cir.1991) (2–1) (reaching the opposite conclusion).[2] We agree with the Tenth Circuit that the ECPA does apply, and affirm the district court.

I

Sellers of pay television programming beam their signals via communications satellites to subscription television services, such as cable television systems, and to individual subscribers who own satellite dishes. To prevent nonsubscribers from viewing the programming, sellers scramble their transmissions with the Videocipher II encryption system, the de facto industry standard at the time of Lande's conduct. *See* James C. Goodale, *All About Cable* § 5.10[4][b] (1991 ed.). Subscribers with home satellite dish antennas use the Videocipher II satellite descrambler module to descramble programming for which they have paid. Each descrambler unit has a unique electronic "address." When a customer subscribes to a pay television service, the program provider registers the unique "address" of the subscriber's unit in the provider's satellite transmission of the programs of the station or stations the subscriber has ordered. *See Cable/Home Communication Corp. v. Network Prods., Inc.,* 902 F.2d 829, 834 (11th Cir.1990). This allows the subscriber's unit to descramble those programs.

Lande modified the Videocipher II satellite descrambler module by copying the electronic "address" of a subscriber's Videocipher unit on blank computer chips, which he then installed in other Videocipher descramblers, giving the modified

---

1. Lande also moved to dismiss the indictments because of outrageous government conduct. We affirm the district court's denial of this motion in a separate unpublished disposition.

2. *See also United States v. Splawn,* 963 F.2d 295 (10th Cir.1992) (following *McNutt*); *United States v. Shriver,* 782 F.Supp. 408 (C.D.Ill.1992) (holding that neither section 2511 nor section 2512 prohibits satellite television piracy).

units the same electronic address as the unit of the subscriber. This technique is known as "cloning." *See id.* at 835 & n. 1. Lande then added a new computer chip to the "cloned" Videocipher units so the modified descramblers would unscramble all stations. This is referred to as the "Three Musketeers" technique—"one-for-all and all-for-one." *Id.*[3] Lande then sold the modified Videocipher descramblers to non-subscribers, enabling them to receive scrambled satellite television programs without payment of the subscription fee. He was charged with violating three provisions of the ECPA, 18 U.S.C. §§ 2511(1)(a), 2512(1)(a), and 2512(1)(b).

## II

█ We interpret the statute de novo. *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1174

(9th Cir.1990). " 'The starting point in every case involving construction of a statute is the language itself.' " *Id.* at 1175 (citation omitted). Because the language of the ECPA covers Lande's conduct, and the evidence of contrary legislative intent is ambiguous at best, we conclude the ECPA applies.

### A

Section 2511(1) prohibits the interception of electronic communications. It provides in part that "[e]xcept as otherwise specifically provided in this chapter any person who—(a) intentionally intercepts ... any ... electronic communication ... shall be punished...." 18 U.S.C. § 2511(1).[4]

█ A person who views satellite television programming by use of a modified descrambler and a satellite dish "intentionally intercepts"[5] the satellite television signal, which is an "electronic communica-

---

**3.** For a more complete description of scrambled satellite pay television and its piracy, including "cloning" and the "Three Musketeers" chip, see generally *In the Matter of Inquiry into the Scrambling of Satellite Television Signals and Access to those Signals by Owners of Home Satellite Dish Antennas,* Gen. Docket No. 86–336 (available on WESTLAW, FCOM–FCC database), 1987 FCC LEXIS 4240 (1987) ("First Scrambling Report"); *In the Matter of Inquiry into the Scrambling of Satellite Television Signals and Access to those Signals by Owners of Home Satellite Dish Antennas,* Gen. Docket No. 86–336 (available on WESTLAW, FCOM–FCC database), 1988 FCC LEXIS 376 (1988) ("Second Scrambling Report").

**4.** Section 2511(1) states:

Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or

transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1).

**5.** *See* 18 U.S.C. § 2510(4) (" 'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device").

tion." [6] Subsection 2511(1) prohibits all such intentional interception, "except as ... specifically provided." Subsections 2511(2), (4) and (5) contain numerous exceptions to the broad reach of subsection 2511(1).[7]

However, no exception is "specifically provided" for the unauthorized viewing of scrambled satellite television signals.[8]

Thus, by its plain language section 2511(1) prohibits the conduct with which Lande was charged.

### B

Section 2512 deals with devices for the interception of electronic communications. It applies however, only to devices "primarily useful for the purpose of the surreptitious interception of ... electronic communications." [9]

◼ We agree with the Tenth Circuit that the interception of signals by modified descramblers is "surreptitious" within the meaning of section 2512. *See McNutt*, 908 F.2d at 565 ("Because the providers of pay television programming are unaware that their signals are being intercepted by cloned descramblers, such interception is surreptitious."). Satellite transmissions could not be intercepted any more "surreptitious[ly]" than by these devices which cannot be detected by producers of electronic television programming.

◼ We also agree that the "design" of these modified descramblers renders them "primarily useful for the purpose of ... surreptitious interception." It is difficult to imagine any purpose for these modified descramblers other than the unauthorized interception of satellite television signals. To be sure, before modification the descramblers might be put to legitimate use, but once modified they serve no purpose except to allow surreptitious interception.

We need not decide if a modified descrambler that was simply a "clone" of a legitimate descrambler would be covered by section 2512. These modified descramblers were not mere clones; they also contained a new computer chip that caused the unit to descramble programming from every pay television station, not just from those stations the electronic "address" was authorized to receive. The design of Lande's modified descramblers thus differs from the design of a legitimate descrambler in a way that makes his modified

---

If section 2511 prohibits an interception, aiding and abetting such interception is a crime. *See* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). Since Lande was charged with violating section 2511 as an aider and abettor, his conduct would be covered by the ECPA.

6. *See* 18 U.S.C. § 2510(12) ("'electronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system....").

7. For example, the unauthorized viewing of cable television (the type transmitted by wire) is not prohibited by the ECPA. 18 U.S.C. § 2511(2)(g)(iii)(I). Exceptions are also made for the viewing of certain unscrambled satellite television signals, *see* 18 U.S.C. §§ 2511(2)(g)(iii)(II), 2511(4)(c)(i), while the interception of other unscrambled television transmissions is subject only to civil penalties, *see* 18 U.S.C. § 2511(5)(a)(i)(A). Authorized and otherwise lawful pay television viewing, of course, is not prohibited by the ECPA. *See* 18 U.S.C. § 2511(2)(d).

8. Even if section 2511(1) did not expressly state that exceptions must be "specifically provided," the "generally accepted principal of statutory construction ... is that when Congress explicitly enumerates exceptions to a general scheme, exceptions not explicitly made should not be implied, absent evidence of contrary legislative intent." *Far West Fed. Bank v. Director, OTS*, 951 F.2d 1093, 1097 (9th Cir.1991).

9. Section 2512(1) provides in pertinent part:
    Except as otherwise specifically provided in this chapter any person who intentionally—
    (a) sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications;
    (b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications ...
    shall be fined not more than $10,000 or imprisoned not more than five years, or both.
    18 U.S.C. § 2512.

descramblers useful only to a satellite pirate.

The "specifically provided" exceptions to section 2512 are essentially the same as those to section 2511(1), and do not aid Lande.

We conclude that by its language section 2512 also prohibits the conduct with which Lande was charged.

## III

Relying on the Eleventh Circuit's opinion in *Herring*, Lande argues that, despite the clear language of sections 2511 and 2512, Congress did not intend the ECPA to cover the interception of satellite television.

There are " 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.... [and in] such cases the intention of the drafters, rather than the strict language, controls,' " *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citation omitted), but "only 'the most extraordinary showing of contrary intentions ... would justify a limitation on the "plain meaning" of the statutory language,' " *United States v. Van Winrow*, 951 F.2d 1069, 1072 (9th Cir.1991) (citation omitted).

### A

As the Eleventh Circuit pointed out in *Herring*, the legislative history of the ECPA contains a number of statements that "satellite cable programming" as defined in 47 U.S.C. § 605 is excluded from the coverage of the ECPA.[10] The most natural interpretation of these statements, however, is that they refer not to both subsections of section 605, but only to subsection 605(b), which excludes *unencrypted* satellite transmissions of television programming from the prohibition in section 605(a). Unencrypted satellite transmissions are also expressly excluded from the ECPA by subsection 2511(2)(g)(iii)(II) by reference to the exclusion in subsection 605(b). Subsection 2511(2)(g)(iii)(II) provides that "[i]t shall not be unlawful under this chapter ... to engage in any conduct which ... is excepted from the application of [section 605(a) ] by [section 605(b) ]," and subsection 605(b)(1) expressly exempts only programming that "is not encrypted." [11]

If Congress had intended to exempt *all* satellite pay television transmissions from the coverage of the ECPA, it would have been unnecessary to include in the ECPA the narrower exclusion provided by subsection 2511(2)(g)(iii)(II). It is unlikely Congress intended a broad implicit exception of all satellite television transmissions that would render the explicit exclusion in subsection 2511(2)(g)(iii)(II) of the statute surplusage.

---

**10.** For example, the Senate Report summarizing the ECPA states:

> The private viewing of *satellite cable programming*, network feeds and certain audio subcarriers will continue to be governed exclusively by [47 U.S.C. § 605], and not by chapter 119 of title 18 of the United States Code [18 U.S.C. §§ 2510–2521].

S.Rep. No. 541, 99th Cong., 2d Sess. 22 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3576 (emphasis added). Senator Leahy, one of the bill's principal sponsors, made the same statement. 132 Cong.Rec. S14450 (daily ed. Oct. 1, 1986) (statement of Sen. Leahy). The summary by committee staff members accompanying the introduction of the ECPA in the Senate states:

> Certain electronic communications are exempted from the coverage of the bill including ... the satellite transmission of *satellite cable programming as defined in [47 U.S.C. § 605]....*

132 Cong.Rec. S7999 (daily ed. June 19, 1986) (emphasis added). Senator Mathias, another principal sponsor, stated the ECPA

extends privacy protection to new forms of electronic communications, but is careful to exempt media in which privacy is not expected, such as tone only paging devices; amateur radio services; police, fire, and other public safety radio communications systems; and many satellite transmissions, including network feeds destined for rebroadcast, *and satellite cable programming as defined in 47 U.S.C. § 605.*

132 Cong. Rec. S14451 (daily ed. Oct. 1, 1986) (statement of Sen. Mathias) (emphasis added).

**11.** Similarly, the statement found in the Senate Report, *see supra* note 10, comes at the end of a discussion of § 2511(4)(c)'s effect upon network feeds, audio subcarriers, and "unencrypted, unscrambled" satellite transmissions. *See* S.Rep. No. 541, 99th Cong., 2d Sess. 21–22 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3575–76. Rather than stating a separate and broader proposition about all satellite transmissions, the statement concludes that discussion. Read in context, the statement cannot assist Lande.

## B

The Eleventh Circuit points out in *Herring* that section 605 criminalizes satellite television piracy, and reasons that it is unlikely Congress, by later enacting the ECPA, "intended to override or create an overlap with section 605." 933 F.2d at 938. We cannot agree that Congress intended to avoid all overlap between the ECPA and section 605. The language of the ECPA does not suggest such an interpretation. It exempts from the ECPA *only* conduct that "is excepted from the application of [section 605(a)] by section [605(b)]," 18 U.S.C. § 2511(2)(g)(iii)(II), not conduct *covered* by section 605. In contrast, the immediately preceding subsection, 18 U.S.C. § 2511(2)(g)(iii)(I), exempts from the ECPA *all* conduct *covered* by 47 U.S.C. § 553, which prohibits piracy of cable television carried by wire. The difference in the treatment of sections 553 and 605 indicates Congress did not seek to avoid overlap with all extant criminal statutes, but only with some.

Moreover, in contrast to the somewhat ambiguous statements concerning an exception for "satellite cable programming," other parts of the legislative history make it absolutely clear Congress intended the ECPA to overlap section 605, covering some conduct the earlier statute already prohibited. Consider the following colloquies, involving principal sponsors of the ECPA, immediately preceding the ECPA's passage in the House:

> Mr. MOORHEAD: ... this legislation covers conduct that may be prohibited under [47 U.S.C. § 605]. Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section [605] ...?
>
> Mr. KASTENMEIER: That is correct.... The private viewing of any other video transmission not otherwise excepted by section [605(b)] will be subject

to action under both the Communications Act and this legislation.

132 Cong. Rec. H8985 (daily ed. Oct. 2, 1986), and in the Senate:

> Mr. DANFORTH: This legislation covers some conduct that also is prohibited under [47 U.S.C. § 605]. Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section [605]?
>
> Mr. MATHIAS: That is correct.... The penalties provided for in the Electronic Communications Privacy Act are in addition to those which are provided by section [605].... The private viewing of any other video transmissions not otherwise excepted by section [605(b)] could be subject to action under both the Communications Act and this legislation.

132 Cong. Rec. S14452–53 (daily ed. Oct. 1, 1986).

## C

█ The Eleventh Circuit reasoned that even if the statutes did overlap, it would be contrary to congressional intent to allow prosecutions under the ECPA (and specifically under section 2512) for conduct also covered by section 605 because "[t]he penalty provisions of the two laws are different in significant ways." *Herring*, 933 F.2d at 938.[12] However, that two criminal statutes "provide[] different penalties for essentially the same conduct is no justification for taking liberties with unequivocal statutory language." *United States v. Batchelder*, 442 U.S. 114, 121–22, 99 S.Ct. 2198, 2202–03, 60 L.Ed.2d 755 (1979). "[T]he penalty provisions are fully capable of coexisting because they apply to convictions under different statutes." *Id.* at 122, 99 S.Ct. at 2203. Where two criminal statutes apply to the same conduct, it is for the prosecutor, not the court, to decide under which statute or statutes to prosecute. *See id.* at 123–24, 99 S.Ct. at 2203–04

---

**12.** The Eleventh Circuit stated:

Violations of section 2512(1)(b) can lead to imprisonment for up to five years and fines of up to $10,000. In 1988, Congress specifically increased the penalties provided under section 605. For the offense at issue, Congress

raised the maximum fine from $25,000 to $50,000 and increased the maximum term of imprisonment from one year to two years. This 1988 amendment indicates two things: (1) Congress did not feel that the more severe imprisonment provisions of section 2512(b)

("[W]hen an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants."); *Ball v. United States*, 470 U.S. 856, 860, 105 S.Ct. 1668, 1670, 84 L.Ed.2d 740 (1985) (when two independent criminal statutes apply, "there is no bar to the Government's proceeding with prosecution simultaneously under the two statutes").[13]

Section 2511 of the ECPA does provide more severe maximum penalties for the unauthorized viewing of satellite pay television than are provided by section 605. This does not indicate, however, that Congress believed section 2511 did not apply to such conduct. The House Report accompanying the 1988 amendments to section 605 specifically refers to the application of section 2511 to satellite television piracy. *See* H.Rep. No. 887(II), 100th Cong., 2d Sess. 14 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5638, 5643 ("In response to the piracy problem, the Federal Communications Commission has increased enforcement efforts under [47 U.S.C. § 605(a)] and Title 18 U.S.Code Section 2511(1), *each of which* prohibit the unauthorized interception and

use of satellite and other radio communications." (emphasis added)).

### D

Although nothing in the legislative history of the ECPA indicates particular concern about satellite pay television piracy, this does not limit the reach of the statutory language. *See Moskal v. United States*, —— U.S. ——, 111 S.Ct. 461, 467, 112 L.Ed.2d 449 (1990) ("This Court has never required that every permissible application of a statute be expressly referred to in its legislative history."). Congress was aware of the broad sweep of the ECPA, and provided express exemptions for the interception of certain unscrambled satellite television signals, and for the interception of cable television carried by wire. Congress was also aware of scrambled satellite pay television. The scrambling of satellite television signals began at the end of 1985, sparking an outcry from home satellite dish owners.[14] Committees in both houses held hearings on the issue prior to passage of the ECPA,[15] and members of Congress asked the Federal Communications Commission to prepare a report on

---

already applied to the conduct at issue; and (2) Congress intended in 1988 that the exact conduct at issue be maximally punished in terms of imprisonment less severely than section 2512(1)(b) provides.
*Herring,* 933 F.2d at 938.

We note that the Eleventh Circuit appears to have misinterpreted the 1988 amendments to section 605. These amendments raised the maximum term of imprisonment for modification of a descrambler to five years, not two years, and the maximum fine to $500,000, not $50,000. In ruling otherwise, the court in *Herring* apparently overlooked section 605(e)(4):

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than *$500,000* for each violation, or imprisoned for not more than *5 years* for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

47 U.S.C. § 605(e)(4) (emphasis added). The maximum prison term provided by the 1988 amendments to section 605 is actually the same as under section 2512.

**13.** Whether the government may obtain *convictions* for the same act of satellite piracy under both the ECPA and section 605 is not before us. *Cf. Ball,* 470 U.S. at 864–65, 105 S.Ct. at 1673–74 (holding government could prosecute the same act under two overlapping criminal statutes, but could not obtain two convictions, even if the sentences ran concurrently); *United States v. Anderson,* 850 F.2d 563, 566–69 (9th Cir.1988) (congressional intent determines whether the same act may lead to convictions under two overlapping criminal statutes). Lande challenges only the applicability of the ECPA to his conduct, and that is the only issue we decide.

**14.** In late 1985, two pay per view services began scrambling. Home Box Office became the first major service to scramble its signals on January 15, 1986. Second Scrambling Report, 1988 FCC LEXIS 376, at n. 1. The FCC soon began to express concern over piracy. *Id.* at *8–*9.

**15.** *Ensuring Access to Programming for the Backyard Satellite Dish Owner: Hearings on H.R. 1769, H.R. 1840 and H.R. 3989 Before the Subcomm. on Telecommunications, Consumer Protection, and Finance of the House Comm: on*

the rise of scrambling.[16] The absence from the ECPA of an express exemption for piracy of scrambled satellite pay television cannot be attributed to oversight or congressional unfamiliarity with the problem.

■ Since Lande's conduct was already subject to criminal sanction under section 605 when the ECPA was enacted, he cannot argue it was innocent conduct Congress could not have intended to prohibit. *See Moskal,* 111 S.Ct. at 470 (stating Court's interpretation of statute would not extend it to cover "innocent" conduct). Nor is this an appropriate case for application of the rule of lenity; "the touchstone of the rule of lenity is statutory ambiguity," *id.* at 465 (citations and internal quotation marks omitted), and the language of sections 2511 and 2512 is not ambiguous.

AFFIRMED.

Energy and Commerce, 99th Cong., 2d Sess. (1986); *Scrambling of Satellite Television Signals: Hearing Before the Senate Comm. on Commerce, Science and Transportation,* 99th Cong., 2d Sess. (1986).

**16.** *See In the Matter of Inquiry into the Scrambling of Satellite Television Signals and Access to those Signals by Owners of Home Satellite Dish Antennas,* Gen. Docket No. 86–336, 1986 FCC LEXIS 2855 (1986).