**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 91-7373

UNITED STATES of AMERICA,

Plaintiff-Appellee,

VERSUS

CHARLES LESLIE HARRELL,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Mississippi

(January 29, 1993)

Before REYNALDO G. GARZA, HIGGINBOTHAM and EMILIO M. GARZA, Circuit Judges.

REYNALDO G.GARZA, Circuit Judge:

Appellant, Charles Leslie Harrell, appeals his convictions of modifying and selling descramblers modules for the purpose of decrypting satellite transmissions in violation of 18 U.S.C. § 2512(1)(b) and 47 U.S.C. § 605(e)(4). Upon review, we find both statutes were correctly applied and we therefore AFFIRM.

FACTS

The FBI and the Motion Picture Association of America conducted an investigation involving the illegal modification of

Video-Cipher II (VCII) systems used to descramble satellite transmissions. Talley, an undercover agent for the MPA, brought 4 modules to Harrell for modification to illegally intercept satellite programming signals. Harrell was arrested and charged with modifying and selling descramblers on 2 occasions, November 29 and December 6, 1990. He was indicted on 4 counts, counts 1 and 2 for the manufacture and sale of devices for the interception of electronic communication in violation of 18 U.S.C. § 2512(1)(b) and counts 3 and 4 for the manufacture and sale of devices used for the unauthorized decryption of satellite cable programming in violation of 47 U.S.C. § 605(e)(4). Appellant was convicted on all counts and he then filed motions for a judgment of acquittal and for a new trial, which were denied. Harrell was sentenced to 3 years probation on each count to run concurrently and ordered to reside in a halfway house for 4 months. He was also fined $3000 and charged a special assessment of $200.

## ANALYSIS

I. Appellant argues that 18 U.S.C. § 2512(1)(b)[1] does not apply to

_____

[1] 18 U.S.C. § 2512 states in relevant part:
Manufacture, distribution, possession, and
advertising of wire, oral, or electronic communication
intercepting devices prohibited
(1) Except as otherwise specifically provided in this
chapter, any person who intentionally-
. . .
(b) manufactures, assembles, possesses, or sells any
electronic, mechanical, or other device, knowing or
having reason to know that the design of such device
renders it primarily useful for the purpose of the
surreptitious interception of wire, oral, or electronic
communication, and that such device or any component

the interception of satellite transmissions and specifically to modified decryption modules. He states that the statute's phrase "design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications" does not encompass modified decoders. Harrell contends that the modules were only slightly modified and therefore were not primarily designed for surreptitious listening. The modules had been implanted with a chip with the address of a paying customer in order that non-paying usurpers could unscramble encrypted satellite transmissions.

It is obvious from the exceptions adopted by the statute that the descrambling of encrypted messages constitutes piracy. § 2511(2)(g)(iii)(II) adopts the exception stated in 47 U.S.C. § 605(b)(1)[2], formerly § 705 of the Communications Act of 1934. That exception states the interception of unencrypted transmissions is not unlawful. The statute clearly does not exempt the surreptitious interception of encrypted and scrambled signals. § 2512 plainly states the proscription of eavesdropping of electronic communications, such as satellite transmissions.

Since it has been determined that the statute applies to the

_____

thereof has been sent through the mail or transported in interstate or foreign commerce;. . .

[2] 47 U.S.C.§ 605(b) provides in pertinent part:
(b) The provisions of subsection (a) of this section shall not apply to the interception or receipt by any individual, or the assisting (including the manufacture or sale) of such interception or receipt, of any satellite cable programming for private viewing if-
(1) the programming involved is not encrypted;

3

piracy of satellite cable programming, we must now ask if the modified module has become primarily useful for this surreptitious interception. We now join several other circuits who have previously found that the modified VCII modules are primarily designed for electronic eavesdropping proscribed by § 2512(1)(b). The primary purpose of the legal unscrambling of subscribed programs has been permanently changed by the new computer chip which enables unlimited viewing of unpaid signals. We find it unreasonable to believe that an individual, having illegally spent about $300 for the modified chip, will still primarily limit himself to his originally paid programming. These air communication pirates consciously transgress the law because they want to watch specific scrambled programs such as newly released movies or timely sporting events. The modified modules are rendered incapable of any service because the observed tampered seal would subject the users to the risk of being reported to the proper authorities. The modules, also, cannot have there official programming changed because their assigned address computer chips have been replaced. Therefore, the modules cannot be serviced, changed, sold or even given away in fear that the user's piracy be found out. The broken seal has delegated the modules to secrecy, unable to reenter the legal mainstream.

We agree with the Eighth Circuit's recent opinion, <u>United States v. Dwayne</u>, 978 F.2d 415 (8th Cir. 1992) (en banc), which overruled their earlier interpretation in <u>United States v. Hux</u>, 940 F.2d 314 (8th Cir. 1991). The panel found that the surreptitious

4

interception of satellite transmissions was prohibited by §

2512(1)(b). The court stated in Dwayne:

> Receiving and decrypting or unscrambling a satellite signal, however, takes significant effort and is not an act of inadvertence. Furthermore, the act of encrypting or scrambling a satellite signal evinces the originator's intent to prevent unauthorized persons from viewing the transmission . . . . Davis [defendant] altered the operation of the VCII devices by making major modifications. He opened the devices, thereby breaking a security seal, removed an epoxy-protected microprocessor chip by melting away the epoxy, added a connector and replaced the removed microprocessor chip with a new one containing modified software. . . .[A]ny direct examination of a device in order to discover its address or to repair it would have led to the discovery of the illegal modifications. Consequently, individuals possessing these modified devices were required to use them in a most surreptitious manner. Also, "[a] device will not escape the prohibition merely because it may have innocent uses. The crucial test is whether the design of the device renders it primarily useful for surreptitious listening.". . . Accordingly, the devices Davis modified violated section 2512(1)(b).

Id. at 419, 420, (quoting S.Rep. No. 1097, 90th Cong.2d Sess.

(1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2183 (emphasis in

original).

The modification renders the modules illegal without any

chance that they could become legal again. The design has been

forever changed so that the module can conduct surreptitious

interception and it follows that the user of such a modified

decoder will risk breaking the law only because he primarily wants

to use this module to view nonsubscribed programming. Other

circuits also share our interpretation. The 9th Circuit recently

5

stated in United States v. Lande, 968 F.2d 907 (9th Cir. 1992):

> We also agree that the "design" of these modified descramblers renders them "primarily useful for the purpose of . . . surreptitious interception." It is difficult to imagine any purpose for these modified descramblers other than the unauthorized interception of satellite television signals.

Id. at 910. The 10th Circuit also found that modified television modules that surreptitiously intercept encrypted messages is prohibited by § 2512. United States v. McNutt, 908 F.2d 561, 565 (10th Cir.) cert denied, 111 S.Ct. 955 (1991). We distinguish our own circuit's holding in United States v. Schweihs, 569 F.2d 965 (5th Cir. 1978) on its facts. We found that § 2512 did not apply to an amplifier being used during a burglary. The amplifier had alligator clamps connected to it and was being used to determine which telephone wire was transmitting a silent alarm. The device was not modified as the module was in the instant case. The amplifier was found to be the same as any other when the temporary clamps were removed. The actual instrument had not been modified and therefore retained its primary legal use. The module in our case was internally and permanently changed to accommodate the surreptitious interception of actual satellite programs, not just silent alarm signals. The appellant's reliance on Schweihs is misplaced.

II. The appellant also argues that § 605(e)(4)[3] is vague and that

_____

[3] 47 U.S.C. § 605(e)(4) states:
(4) Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic,

the statute solely prohibits commercial cable transmissions as opposed to individual television signals as delineated in the definitions, § 605(d)(1).[4] We find that the statute specifically proscribes the surreptitious interception of satellite transmissions and it is not vague or ambiguous at all. We reject the argument that the word "cable" signifies only commercial usage and that the statute distinguishes between the direct transmission of satellite signals directly to individuals or its retransmission via a cable operator. The statute prohibits the surreptitious interception of any encrypted satellite signal intended for private use, either directly to the individual or indirectly through a cable operator. The statute's purpose is to proscribe the piracy of programming signals, whether they be for commercial or personal use. The 9th Circuit stated in On/TV of Chicago v. Julien, 763 F.2d 839 (9th Cir. 1985):

---

mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

[4] 47 U.S.C. § 605(d)(1) states:
    (d) Definitions
        For the purposes of this section-
        (1) the term "satellite cable programming" means video programming which is transmitted via satellite and which is primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers;

7

> Thus, courts have concluded that although the content of subscription television programming may be of interest to the general public, the scrambled transmissions are intended only for the benefit of the paid-up subscribers. Because subscription television programming is intended for the benefit of paying subscribers only, it does not fall within the "broadcasting for the use of the general public" exception to § 605. Section 605, therefore, prohibits unauthorized interception of the scrambled signal.

Id. at 843. The legislative history of the 1988 amendment for § 605 is clear. The district court quoted some of this history in United States v. Scott, 783 F.Supp. 280 (N.D.Miss. 1992):

> Section 5 of the Act amends Section 705 of the Communications Act pertaining to the piracy of satellite cable programming. The Committee's amendment is intended to deter piracy practices by (1) stiffening applicable civil and criminal penalties, (2) expanding standing to sue, and (3) making the manufacture, sale, modification, importation, exportation, sale or distribution of devices or equipment with knowledge that its primary purpose is to assist in unauthorized decryption of satellite cable programming expressly actionable as a criminal act. The Committee believes these changes are essential to preserve the longterm viability of the TVRO industry. . . . The piracy problem is rampant both among commercial users of the VideoCipher II (hotels, lounges, and other establishments) and among private home users.

Id. at 282, (quoting from 1988 U.S.Code Cong. & Admin.News 5657-58). It is unambiguous that the interception of encrypted satellite transmissions for television programming for commercial or private use is also prohibited by § 605(e)(4).[5] United States

---

[5] There seems to be a significant overlap between § 2512 and § 605. Since a possible double jeopardy question is not before us, we do not address this issue today. Ball v. United States, 470 U.S. 856, 84 L.Ed.2d 740, 105 S.Ct.

8

v. Shriver, 980 F.2d 456 (9th Cir. 1992).  It challenges reason that the statute would not include the prohibition of the surreptitious interception of subscribed individual television programming.

III.  The appellant also argues that the court erred in responding affirmatively to the jury that § 605(e)(4) applied to home satellite dishes.  For the aforementioned reasons, it is clear that the statute pertains to commercial as well as individual users, including those with their own satellite dishes.

CONCLUSION

§ 2512(1)(b) and § 605(e)(4) clearly prohibit the surreptitous interception of satellite transmissions, for commercial and private use.  The modified module becomes primarily useful for this purpose.  For all of the above reasons, we
AFFIRM.

_____

1168        (1985); Illinois v. Vitale, 447 U.S. 410, 65 L.Ed.2d 228,        100 S.Ct. 2260 (1980).  We note, that at least the sentences        for the 4 convictions, 2 violations under each statute, are        to run concurrently.