**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 94-60161

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MARGARET S. CRAWFORD,

Defendant-Appellant,

AND

No. 94-60162

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

EDWARD B. CRAWFORD,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Mississippi

(May 15, 1995)

Before WISDOM, DUHÉ and BENAVIDES, CIRCUIT JUDGES.

BENAVIDES, CIRCUIT JUDGE:

Defendants-Appellants Margaret Crawford ("Margaret") and

-1-

Edward Crawford ("Edward") appeal their convictions of violating two statutes that each proscribe the manufacture or sale of devices for the unauthorized interception of cable television signals.  18 U.S.C. § 2512(1)(b);[1] 47 U.S.C. § 605(e)(4).[2] Finding no reversible error, we affirm.

FACTS AND PROCEDURAL HISTORY

The Defendants owned and operated an electronics business in Meridian, Mississippi.  At two different times, an FBI agent took a television satellite descrambler module to their place of business, complaining that the module did not function properly.  Both times, Margaret received the module and returned it operational for a fee paid by the agent.  The Government,

_____

[1]    Except as otherwise specifically provided in this chapter, any person who intentionally . . . manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce . . . .

18 U.S.C. § 2512(1)(b).

[2]    Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming . . . .

47 U.S.C. § 605(e)(4).

alleging that the Defendants' repairs on the modules gave them the capability of illicitly intercepting cable television signals, indicted the Defendants for conduct violating the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2512(1)(b), and 47 U.S.C. § 605(e)(4).  A jury found the Defendants guilty of all counts.

## I.  DOUBLE JEOPARDY CLAIM

The Defendants argue that their convictions violate the Double Jeopardy Clause, which prohibits "multiple punishments for the same offense."  United States v. Singleton, 16 F.3d 1419, 1422 (5th Cir. 1994) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled in part on other grounds, Alabama v. Smith, 490 U.S. 794, 802-03, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)).  Whether different statutes punish the same offense is determined by the standard in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Singleton, 16 F.3d at 1422.  That standard requires that the two statutes be compared to determine "whether each provision requires proof of an additional fact which the other does not."  Id. (quoting Blockburger, 284 U.S at 304).  The statutes fail the Blockburger test, precluding punishment under both, if "either statute contains no element not also found in the other statute." Id.  An exception is made when the legislature intended an overlap to allow punishments under both.  Id.

-3-

The Defendants argue that the ECPA and 47 U.S.C. § 605(e)(4) significantly overlap and cite United States v. Chrane, 529 F.2d 1236, 1238 (5th Cir. 1976), which held that, if there is any doubt on the legislative intent, the doubt must be resolved in favor of the Defendant.  We believe that Congress clearly intended an overlap to allow punishments under both the ECPA and § 605, thus even assuming that each statute fails to "require[] proof of an additional fact which the other does not," the statutes do not fail the Blockburger test.

The legislative history of the ECPA "make[s] it absolutely clear Congress intended the ECPA to overlap section 605, covering some conduct the earlier statute already prohibited."  United States v. Lande, 968 F.2d 907, 912 (9th Cir. 1992), *cert. denied*, 113 S.Ct. 1299 (1993).  As recognized in Lande, the following excerpts of colloquies involving the principal sponsors of the ECPA immediately before its passage support this conclusion:

> [Representative] MOORHEAD:    . . . this legislation covers conduct that may be prohibited under [47 U.S.C. § 605.]  Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section [605] . . . ?

> [Representative] KASTENMEIER: That is correct. . . . The private viewing of any other video transmission not otherwise excepted by section [605(b)] will be subject to action under both the Communications Act and this legislation.

Id. (quoting 132 Cong. Rec. H8985 (daily ed. Oct. 2, 1986)).  A similar conversation occurred in the Senate:

> [Senator] DANFORTH:    This legislation covers some conduct that also is prohibited under [47 U.S.C. § 605].  Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section [605]?

-4-

> [Senator] MATHIAS: That is correct. . . . The penalties provided for in the Electronic Communications Privacy Act are in addition to those which are provided by section [605]. . . . The private viewing of any other video transmissions not otherwise excepted by section [605(b)] could be subject to action under both the Communications Act and this legislation.

Id. (quoting 132 Cong. Rec. S14452-53 (daily ed. Oct. 1, 1986)). As a part of his response to Senator Danforth's question, the Congressional Record also reveals that Senator Mathias stated: "These supplemental sanctions are particularly important where an unauthorized interception is made for direct or indirect financial gain. This bill is designed to help put an end to such conduct." 132 Cong. Rec. S14453 (daily ed. Oct. 1, 1986) (emphasis added).

Accordingly, because the legislative history is clear that, in enacting the ECPA, Congress intended an overlap and articulated punishments for those actions punishable under both the ECPA and 47 U.S.C1. § 605, there is no Double Jeopardy Violation.[3]

## II.    INVOLUNTARY STATEMENTS

After the Defendants returned the repaired modules to the undercover FBI agents, but before the Defendants were arrested, the

---

[3]The Crawfords also erroneously contend that the court in Lande held that the prosecutor should choose between the two sections. Lande, 968 F.2d at 912. However, the Lande court made no such holding. The Crawfords also cite Ball v. United States, 470 U.S. 856 (1985), and argue that Ball held that the government could prosecute the same act under two overlapping statutes, but could not obtain two convictions even if the sentences ran concurrently, id. at 864-65. In Ball, however, the Court found that Congress did not intend to punish the petitioner's conduct under both statutes, which overlapped. Id. at 864. Further, Ball did not involve § 2512 and § 605.

FBI conducted pursuant to a warrant a search of the Defendants' electronics shop. The Defendants argue that statements they made during this search were erroneously admitted at trial. The statements are as follows: Margaret's statement that she tried to get Edward to direct their business away from altering cable television modules. Edward's statements that about one percent of his 400 customers were operating legal descramblers and that 90 percent of his business was legitimate.

It is undisputed that, during the execution of the search warrant, the Defendants were not advised of their rights as delineated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, after conducting a suppression hearing, the district court found that the Defendants were not in custody at the time of the statements and that no coercion was exerted upon them. Accordingly, it denied the motions of each Appellant who sought to suppress the statements.

A district court's ruling on the admissibility of evidence is reviewed for abuse of discretion. United States v. Bermea, 30 F.3d 1539, 1574 (5th Cir. 1994), *cert. denied*, 1995 WL 156657 (1995). "We have long pitched the standard of review for a motion to suppress based on live testimony at a suppression hearing at a high level." United States v. Randall, 887 F.2d 1262, 1265 (5th Cir. 1989). Findings of fact are accepted unless clearly erroneous or based on an incorrect view of the law. Id. A clearly erroneous finding is one that is not plausible in light of the record viewed in its entirety. Anderson v. City of Bessemer City, 470 U.S. 564,

573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Miranda warnings must be given prior to a custodial interrogation. United States v. Pofahl, 990 F.2d 1456, 1487 (5th Cir.), *cert. denied*, 114 S.Ct. 560 (1993). "A person is `in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." Id. (internal quotation marks omitted).[4] We review the district court's finding that the Appellants were not in custody at the time of the statements.

At the suppression hearing, FBI Agent Orrin Fuelling ("Fuelling") testified that the Crawfords were not under arrest during the search. To his knowledge, they did not ask to leave the premises, and officers did not tell the Crawfords that they were or were not free to leave. Fuelling testified that, when the officers entered the premises, only Margaret was present. When he served the search warrant, Margaret asked if she could call Edward. The officers said that she could, she did, and Edward came to the shop. Fuelling stated that, during the search, officers answered the telephone and waited on customers; the officers did not allow the Crawfords to do so. When Edward arrived, he sat in the break room

---

[4]  Margaret argues that the four-factor test set forth in United States v. Charles, 738 F.2d 686 (5th Cir. 1984), is the applicable test to determine whether custodial interrogation has occurred. However, in United States v. Bengivenga, 845 F.2d 593 (5th Cir.) (en banc), *cert. denied*, 488 U.S. 924, 109 S.Ct. 306 (1988), this Court abandoned that test, id. at 596-97.

of the shop, and agents talked to him there from time to time during the search. Fuelling also testified that, when agents found a small quantity of marijuana, he advised Edward of his <u>Miranda</u> rights but also told him that he was not in custody and that he was free to go.

FBI Agent Laura Henry ("Henry") also testified at the hearing. She was not aware of anyone telling the Crawfords that they were not free to leave or that they had to remain at the shop, nor did she know of the Crawfords asking to leave. They were not restricted in their movements. FBI Agent Patrick Fallon testified that the Crawfords voluntarily cooperated with the search; no one required them to be there. Tom Shiel ("Shiel") was also present at the search in his capacity as an investigator for the Motion Picture Association of America, along with fellow investigator Robert Butler. Shiel stated that no one told the Crawfords that they were not free to leave nor did they ask to leave. Supervisory FBI Agent Jerry Marsh ("Marsh") testified that he did not direct any agent to tell the Crawfords that they were not free to leave. Marsh, however, also testified that, during the search, the Crawfords could not go from room to room within the shop without being accompanied by an agent.

Edward also testified at the suppression hearing. When he arrived at the shop, he stated, he found men in suits wearing guns. When he sat in the break room, he was "sandwiched between two men at all times" and felt intimidated; no one told him that he was free to leave or move about the shop, and he felt as if he had no

freedom. Edward continued by stating that he did not feel free to refuse to answer questions and did not feel free to make any telephone calls. Although no one drew or displayed a weapon, Edward testified that it was easy to see that the agents were wearing weapons. No one ever told him to sit in a certain place, but he had the impression that he should sit down. He was not allowed to be in Margaret's presence, but he was not told that. When the marijuana was found, Fuelling advised him of his rights and told him that he was free to go. That was after he had been questioned about the modules, however; the search was almost complete at that point.

Margaret also testified. When Fuelling presented himself and the search warrant, Margaret stated that she asked his permission to call Edward, which was given. Margaret continued by stating that she had the impression that the agents were reaching for their guns and felt that she had to ask permission to make the call. Margaret also testified that, during the search, agents prevented her from waiting on customers and that she did not attempt to leave because she did not think that she would be allowed to leave. Further, although she did not feel free to leave, she did not want to leave because she wanted to stay to protect the electronic equipment in the shop from damage by the agents. Margaret also stated that the agents permitted her out of their presence only when she went to the bathroom and that she did not feel that she could refuse to answer the agents' questions.

A Meridian police officer testified that, while the search was

in progress, he called the business on an unrelated matter. He asked to speak with either Margaret or Edward, and Fuelling refused to let him speak with them.

At the conclusion of the hearing, the court determined that, although the agents "descended on this business," they did so with the purpose of conducting a search and gathering evidence. That occurrence did not translate into the custody of the Defendants. The court found that Margaret telephoned Edward, he came to the shop voluntarily, neither Defendant was arrested, and that Edward's testimony did not indicate that he was coerced into making a statement. The court further found that "[t]hey were more worried about their electronic equipment, not having their shop disrupted than they were about being held in custody." Finding that the Crawfords were not in custody during the search, the district court denied their motions to suppress.

It is readily apparent that the district court first addressed whether or not the Crawfords were under formal arrest, and concluded that they were not. Secondly, the district court reviewed the evidence indicating that the Crawfords did not reasonably believe that they were arrested. Accordingly, the district court made findings that are based on the testimony and that addressed both aspects of the test to determine whether Miranda warnings were required for statements to be admissible. See Pofahl, 990 F.2d at 1487. In the light of the record viewed in its entirety, it cannot be said that the trial court's findings are not plausible; the trial court did not err in finding the Crawfords

were not in custody at the time of their statements.

Edward also argues that his statements should not have been admitted without corroboration, relying on the rule that a conviction may not rest solely on a confession. There must be independent evidence of guilt or corroboration of the confession. United States v. Duggan, 936 F.2d 181, 184 (5th Cir.), *cert. denied*, 502 U.S. 951, 112 S.Ct. 404 (1991). But this argument confuses the admissibility of evidence with the sufficiency of evidence, two separate matters.

Nonetheless, even if Edward's statements are considered to be a confession, they are not the only evidence of his guilt. Margaret's statement that she asked Edward to stop making illegal devices corroborates Edward's statements. The search of Edward's shop yielded a memory device for programming a large number of chips to decode signals, a device for erasing programmed information from a large number of chips, and a notebook containing electronic authorization codes that were the property of General Instruments Corporation. The two devices could have had both legitimate and illegitimate purposes. The information in the notebook could be used only for piracy. Thus, Edward's statements were not the only evidence of his guilt.

### III. SUFFICIENCY OF THE EVIDENCE

The Defendants next challenge the sufficiency of evidence to support their guilty verdicts. When reviewing the sufficiency of

the evidence, we view all evidence, whether circumstantial or direct, in the light most favorable to the government with all reasonable inferences and credibility choices to be made in support of the jury's verdict. United States v. Salazar, 958 F.2d 1285, 1290-91 (5th Cir.), *cert. denied*, 113 S.Ct. 185 (1992). The evidence is sufficient to support a conviction if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. United States v. Faulkner, 17 F.3d 745, 768 (5th Cir), *cert. denied*, 115 S.Ct. 193 (1994).

Margaret contends that the evidence does not show beyond reasonable doubt that she modified the gray circuit board (one of the modules given to her by the FBI agents) or that she was capable of modifying the board, and that it was more probable that others may have done the modifying either before or after the Defendants had possession of it. As an example, she argues that it would have taken 20 minutes to replace a certain chip on the gray board, and that the 30-minute time span she had the board was inadequate for her to have done this modification. Margaret also argues that the gray board did not work after she returned it, and that it was in such a bad state that it was not possible to tell whether anything had changed. She also argues that "[a]ny modifications [of the black circuit board (the other module given to the her by the FBI

-12-

agents)] that tended to incriminate [her], because of the partisan chain of custody, could have been performed at [a corporation] after Margaret had tested it on May 11th."

To the extent that the above arguments call into question whether or not Margaret manufactured or assembled an illicit device, Margaret fails to challenge the evidence in the record that she sold such a device, which is also punishable under both statutes. For example, it is uncontested that Margaret received payments for the repairs done on the modules, and there is testimony in the record that Margaret stated to FBI Agent Henry after returning a module that "now you can view scrambled television programs." This testimony clearly supports a conclusion that Margaret sold a device capable of illicitly intercepting television signals. Further, Margaret's statements also indicate that the modules were in good working condition after the Defendants repaired and returned them to the FBI.

Edward contends that the evidence is insufficient to sustain his convictions, asserting that all of the evidence was circumstantial "but for the Government's testimony of his admissions of illegal modification which, Edward explained, ceased in 1991." However, the jury was free to reject Edward's explanations of his admissions of illegal activity. It did so. The evidence is clearly sufficient to sustain his conviction.


IV.  JURY INSTRUCTIONS


-13-

Edward next contends that the jury was improperly instructed. He asserts that the instruction was vague to the extent that it did not specifically identify the device(s) involved. He argues that the indictment identified the devices as "satellite descrambler modules," but the court failed to instruct the jury to determine whether such modules were involved.

Edward did not raise this objection in the district court. "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Fed.R.Crim.P. 30. When a criminal Defendant has forfeited an error by failing to object, we may remedy the error only in the most exceptional case. United States v. Calverley, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), *cert. denied*, 115 S.Ct. 1266 (1995); United States v. Rodriquez, 15 F.3d 408, 414 (5th Cir. 1994), *cert. denied*, 1995 WL 36679 (1995). The Supreme Court has directed the courts of appeals to determine whether a case is exceptional by using a two-part analysis. United States v. Olano, 113 S.Ct. 1770, 1777-79 (1993).

First, an Appellant who raises an issue for the first time on appeal has the burden to show that there is actually an error, that it is plain ("clear" or "obvious"), and that it affects substantial rights. Olano, 113 S.Ct. at 1777-78. Second, even when the Appellant carries his burden, a remedy "is permissive, not mandatory. If the forfeited error is `plain' and `affect[s]

-14-

substantial rights,' the Court of Appeals has authority to order correction, but is not required to do so." Id. (quoting Fed.R.Crim.P. 52(b)).

With respect to jury instructions, plain error is found only when the charge, considered as a whole, is so erroneous as to cause a grave miscarriage of injustice or seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Beaumont, 972 F.2d 91, 94 (5th Cir. 1992). Here, Count 1 of the indictment describes the devices as "electronic, mechanical, and other devices, that is, satellite descrambler modules." The jury instruction does not use the term "satellite descrambler modules," but refers to "electronic, mechanical or other device." The language used by the court is identical to the language in the statutes. The district court did not plainly err in failing to refer particularly to the descrambler modules in the jury instruction. Moreover, the trial centered on the satellite descrambler modules as being the illegal devices alleged in the indictment. No miscarriage of justice occurred as a result of the jury instruction. Edward has forfeited his argument by his failure to object in the district court.

## V. CHAIN OF CUSTODY

Finally, Margaret contends that the government did not establish the chain of custody of the modules that were admitted to show her guilt. Evidentiary rulings are reviewed for abuse of

-15-

discretion.  Bermea, 30 F.3d at 1574.

When the government sought to introduce two modules, a "gray board" and a "black board," defense counsel objected on the ground that the chain of custody had not been established.  Counsel argued that the government left open the possibility that the boards were tampered with after they left the Defendants' hands.  The district court overruled the objection, stating that alterations that might have been made in the boards would be an appropriate subject for cross-examination and argument to the jury.

Any break in the chain of custody affects the weight, not the admissibility, of evidence.  Bermea, 30 F.3d at 1574.  Accordingly, even if a break occurred in the instant case, the district court did not abuse its discretion in admitting the evidence.

CONCLUSION

For the foregoing reasons, the Defendants' convictions are **AFFIRMED.**