**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mark Palmer SPLAWN, Defendant–Appellant.**

**No. 91–6251.**

United States Court of Appeals, Tenth Circuit.

Dec. 15, 1992.

June E. Tyhurst, Asst. Federal Public Defender, Oklahoma City, OK, for defendant-appellant.

Susan Stewart Dickerson, Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Before MCKAY, Chief Judge, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL and KELLY, Circuit Judges.

BALDOCK, Circuit Judge.

In *United States v. McNutt,* 908 F.2d 561 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991), a panel of this court held that a cloned satellite television descrambling device, which enables satellite television viewers to receive premium channel broadcasts without paying the required subscription fees, falls within the criminal prohibition on surreptitious interception devices of 18 U.S.C. § 2512(1)(b). 908 F.2d at 564–65. *Accord United States v. Davis,* 978 F.2d 415, 419–20 (8th Cir.1992) (en banc); *United States v. Lande,* 968 F.2d 907, 910–11 (9th Cir.1992). Subsequent to *McNutt,* two circuits reached the opposite conclusion. *See United States v. Herring,* 933 F.2d 932, 939 (11th Cir.1991), *vacated and reh'g granted,* 977 F.2d 1435 (11th Cir.1992). *See also United States v. Hux,* 940 F.2d

314, 318 (8th Cir.1991) (following *Herring* ), *overruled by Davis*, 978 F.2d at 416. Although the contrary decisions of our sister circuits have been overruled or vacated, we had previously granted Defendant–Appellant Mark Palmer Splawn's suggestion for rehearing en banc to reconsider *McNutt* in light of the Eleventh Circuit's contrary reasoning. Reviewing the issue de novo, unconstrained by the panel's opinion in *McNutt*, we believe that *McNutt* was correctly decided; accordingly, we affirm.

Premium channel broadcasters (*e.g.*, HBO, Disney) transmit encrypted signals via communication satellites. A descrambling device is required to receive such signals. Every descrambling device has its own unique electronic address contained within a computer chip. When a satellite television viewer subscribes to a premium channel, the broadcaster programs the viewer's electronic address into its satellite transmissions thereby permitting the viewer to receive the signal.

Defendant cloned computer chips, which stored the electronic addresses from authorized descrambling devices, and inserted them into other descrambling devices. Defendant then sold these unauthorized descrambling devices which would permit satellite television viewers to receive premium channel broadcasts without paying the required subscription fee. Defendant was indicted on nineteen counts of assembling, possessing and selling a surreptitious interception device in violation of 18 U.S.C. § 2512(1)(b). Defendant entered a conditional guilty plea, Fed.R.Crim.P. 11(a)(2),

reserving for appeal the issue of whether his conduct was properly charged under § 2512(1)(b).[1] Relying on *McNutt*, the panel affirmed Defendant's convictions but invited rehearing en banc by stating that the contrary decisions from other circuits "raise some genuine questions as to whether Congress intended the Wiretap Law to encompass [Defendant's] conduct." *United States v. Splawn*, 963 F.2d 295, 296–97 (10th Cir.1992).

Our starting point in construing § 2512(1)(b), as in all cases of statutory construction, is the language of the statute. *Hughey v. United States*, 495 U.S. 411, 415, 110 S.Ct. 1979, 1982, 109 L.Ed.2d 408 (1990). Section 2512(1)(b) provides that:

> any person who intentionally ... manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the ·purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2512(1)(b). The statutory scheme defines "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication,"[2] *id.*

---

**1.** Defendant concedes that his conduct violated 47 U.S.C. § 605 which prohibits inter alia the manufacture, sale or distribution of equipment which is intended to be used in receiving communication by wire or radio outside authorized channels of reception. At the time of Defendant's conduct—*i.e.* February 1987 through December 1988—a violation of § 605 was punishable only as a misdemeanor with a maximum sentence of one year imprisonment and a $25,-000 fine. This statute was amended, effective January 1989, making it a felony, punishable by a two-year term of imprisonment and $50,000 fine for a first conviction and a five year term and $100,000 fine for any subsequent conviction. *See* Satellite Home Viewer Act of 1988, Pub.L. No. 100–667, § 205, 102 Stat. 3959.

**2.** The statutory definition of "electronic, mechanical, or other device" excepts

> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties; [and]

§ 2510(5), and defines "interception" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4). "Electronic communications"[3] is defined as "any transfer of signs, signals, writing, *images, sounds,* data, or intelligence *of any nature* transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric or photooptical system that affects interstate or foreign commerce...."[4] *Id.* § 2510(12) (emphasis added).

As in *McNutt,* "[i]t is undisputed that satellite television transmissions contain sounds and images and are carried via radio waves; therefore they constitute electronic communications under § 2510(12)." *McNutt,* 908 F.2d at 564. *See also Davis,* 978 at 417 ("language of [§ 2510(12)] is broad enough to include programming transmitted by satellites"); *Lande,* 968 F.2d at 910 ("satellite television signal ... is an 'electronic communication'"). Moreover, as the panel in *McNutt* stated, "[s]atellite television descramblers are ... electronic devices which effectuate the interception of electronic communications." *Id.* at 565. *See also Lande,* 968 F.2d at 909–10 ("person who views satellite television programming by the use of a modified descrambler and satellite dish 'intentionally intercepts' the satellite television signal"). The critical question, and the point with which the Eleventh Circuit disagreed, is whether the devices at issue are designed primarily for the purpose of the surreptitious interception of electronic communications.

In *McNutt,* the panel reasoned that "[b]ecause the providers of pay television programming are unaware that their signals are being intercepted by cloned descramblers, such interception is surreptitious." 908 F.2d at 565. *See also Davis,* 978 F.2d at 419 ("modifications made it possible for the device to descramble and decrypt satellite programming without the knowledge of the cable companies"); *Lande,* 968 F.2d at 910 ("Satellite transmissions could not be intercepted more 'surreptitious[ly]' than by these devices which cannot be detected by producers of electronic television programming."). The Eleventh Circuit rejected this reasoning:

> *McNutt's* definition focuses on how the descramblers are being used—so that satellite pay-television companies are "unaware" of the interception. But ... the legislative and precedential history of section 2512(1)(b) clearly indicate that the *design* (as opposed to the use) of the device must make it primarily useful for surreptitious interception of communications.

*Herring,* 933 F.2d at 939. Holding that cloned satellite television descramblers were not proscribed under § 2512(1)(b), the *Herring* court reasoned

> The descramblers involved here have no specifically surreptitious characteristics—the problem with them is that their design is *identical* to descramblers that are legitimate. This identity in design characteristics is what makes appellants' descramblers useful in the first place.... [T]he design of the descramblers gives them significant nonsurreptitious and legitimate uses, and therefore the descramblers are not pri-

---

(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal.... 18 U.S.C. § 2510(5)(a-b). Neither of these exceptions is applicable to a cloned satellite television descrambling device.

**3.** Clearly, satellite television broadcasts are not "wire communications" as such transmissions are not aided by "wire, cable, or other like connection between the point of origin and the point of reception...." 18 U.S.C. § 2510(1). Similarly, satellite television broadcasts are not "oral communications" because they are not "ut-

tered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation...." *Id.* § 2510(2).

**4.** The statutory definition excepts the radio portion of a cordless telephone communication between the handset and the base unit, any wire or oral communication, and any communication from a tone-only paging device or a tracking device. 18 U.S.C. § 2510(12)(A–D). None of these exceptions apply to satellite television transmissions.

marily useful for surreptitious listening....

*Id.* at 934. *See also United States v. Schweihs*, 569 F.2d 965, 969 (5th Cir.1978) (amplifier which assisted defendant in avoiding detection by an alarm system of a building was "*not* primarily useful for the purpose of surreptitious interception of oral or wire communications"). The Eleventh Circuit noted that the descramblers "were necessary to receive satellite transmissions that were scrambled but required no authorization for their use" and noted that the reception of such transmissions was a "significant nonsurreptitious and legitimate use[ ]." *Herring*, 933 F.2d at 934 (footnote omitted).

We have no doubt that, for a device to be prohibited under § 2512(1)(b), its design must "render[ ] it primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications;" indeed, the plain language of the statute commands such a construction. *See* 18 U.S.C. § 2512(1)(b). However, we cannot agree with the Eleventh Circuit that the fact that cloned television descramblers are identical to legitimate descramblers does not make cloned descramblers primarily useful for the surreptitious interception of electronic communications. Legitimate satellite television descramblers are by their very nature unique—each contains its own "electronic address" within a computer chip. By cloning the computer chip of a legitimate descrambler and putting it into another descrambler, Defendant altered the design of the descrambler by making it non-unique. Unlike the amplifier which the Fifth Circuit in *Schweiss* found not to be prohibited under § 2512(1)(b), the only purpose of the descramblers as modified was to permit surreptitious interception. *See Davis*, 978 F.2d at 419–20. Moreover, while descramblers, legitimate or otherwise, may be necessary to receive satellite television transmissions for which no authorization is necessary, the devices at issue are modified descramblers, and the sole purpose of the modification is to permit the surreptitious interception of satellite television transmissions. *See id.* ("modifica-

tions ... made it all but impossible to use the device in any legitimate fashion"). Accordingly, cloned satellite television descramblers, such as those assembled and possessed by Defendant, are designed in such a manner so as to make them primarily useful for the surreptitious interception of electronic communications and are therefore prohibited under the plain language of § 2512(1)(b).

*Herring* looked to the legislative history of § 2512(1)(b) noting that when originally enacted in 1968 it applied to

"a relatively narrow category of devices whose principal use is likely to be for wiretapping or eavesdropping.... To be prohibited, the device would also have to possess attributes that give predominance to the surreptitious character of its use, such as the spike in the case of the spike mike or the disguised shape in the case of the martini olive transmitter...."

*Id.* at 933 (quoting S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2183–84). *Herring* also noted that the purpose of the 1986 amendment, which changed "willfully" to "intentionally" and added "electronic communications" to the statute's earlier protection of "wire and oral communications," *see* Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, §§ 101(c)(1)(A), 101(f)(2), 100 Stat. 1851, 1853, was " 'to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies.' " *Herring*, 933 F.2d at 934–35 (quoting S.Rep. No. 541, 99th Cong., 2d Sess. 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555). Noting that the legislative history to the 1986 amendments "does not discuss the satellite pay-television industry" and "does not indicate that Congress intended to broaden the meaning of 'surreptitious' to encompass devices that have legitimate uses but whose owners use them illegitimately," the Eleventh Circuit held that § 2512(1)(b), as amended in 1986, was not applicable to cloned satellite televi-

sion descramblers.[5]  *Id.* at 935.

We have been reluctant to delve into a statute's legislative history when the conduct at issue fits squarely within the statutory language.  *See United States v. Hill,* 971 F.2d 1461, 1466 n. 9 (10th Cir.1992) (en banc) ("[O]ur resort to the legislative history is proper only when the statutory language is unclear.");  *United States v. Goode,* 945 F.2d 1168, 1169 (10th Cir.1991) ("When the terms of a statute are clear and unambiguous we need not resort to legislative history.").  As stated above, we believe that the devices at issue clearly fit within § 2512(1)(b)'s prohibition; nonetheless, we are not convinced that the legislative history commands a contrary result. In *McNutt,* the panel found the legislative history to be "ambiguous."  908 F.2d at 564.  *Herring*'s focus on the legislative history's lack of discussion about the satellite pay television industry certainly does not resolve this ambiguity.  *See Moskal v. United States,* 498 U.S. 103, 111, 111 S.Ct. 461, 467, 112 L.Ed.2d 449 (1990) ("This Court has never required that every permissible application of a statute be expressly referred to in its legislative history."). Congress did note, in discussing the amendments to 18 U.S.C. § 2511(4)(c), which provides exceptions to the criminal prohibition on intercepting electronic communications, that "[t]he private viewing of satellite cable programming ... will continue to be governed exclusively by [47 U.S.C. § 605]...." S.Rep. No. 541, 99th Cong., 2d Sess. 22 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3576.  *Herring* reasoned that this statement "indicate[s] ... that private viewing and assisting in private viewing (the conduct involved here) is covered exclusively by section 605."  933 F.2d at 935. *Herring*'s construction of this statement reads language into the legislative history of a statute not even at issue.  Moreover, when Congress intended to except certain conduct that would otherwise fit within the plain meaning of the statutory language, it did so clearly and without ambiguity.[6]  *See* 18 U.S.C. § 2511(4)(c) (excepting unencrypted or unscrambled satellite transmissions from criminal prohibition of interception of electronic communications);  *id.* § 2511(2)(g) (excepting various conduct from the criminal prohibitions of chapter). Because we believe that cloned satellite television descramblers fit within the plain meaning of devices prohibited under § 2512(1)(b), we simply cannot agree with the Eleventh Circuit's reasoning that § 2512(1)(b) "established such a narrow category of prohibited devices that an explicit exception would have been superfluous."  *Herring,* 933 F.2d at 932.

■ Defendant argues that his conduct was specifically prohibited under 47 U.S.C. § 605, formerly a misdemeanor; therefore, the government was not free to prosecute under the less specific felony statute.  We agree that Defendant could have been prosecuted under § 605.  However, the fact that Defendant's conduct violated more than one federal criminal law does not require the government to prosecute under the less severe statute.  The Supreme Court has "long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants...." *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755

5.  We agree with the Eleventh Circuit that cloned satellite television descramblers are not prohibited under the pre–1986 version of § 2512(1)(b), but not for the reason that such devices are not designed primarily for the purpose of surreptitious interception.  Rather, under the pre–1986 version, only wire and oral communications were protected under the statute, and it is clear that satellite television broadcasts do not fit the statutory definitions of such communications. *See supra* note 3.

6.  Congress excepted *unencrypted* satellite transmissions from the criminal prohibition of

§ 2512(1)(b).  *See* 18 U.S.C. § 2511(2)(g)(iii)(II) (providing exception for conduct that is excepted from § 705(a) of the Communications Act of 1934 [47 U.S.C. § 605(a) ] by § 705(b) [47 U.S.C. § 605(b) ] ).  *See also* 47 U.S.C. § 605(b)(1) (providing exception for unencrypted programming).  We agree with the Eighth Circuit that "[h]ad Congress wished to exempt all satellite programming from the reach of the Wiretap Act, it would have been unnecessary to include in the Wiretap Act the narrower exclusion...." *Davis,* 978 F.2d at 418.  *See also Lande,* 968 F.2d at 911–12.

(1979). Accordingly, we do not view § 605 as a barrier to Defendant's prosecution under § 2512(1)(b). *See Lande,* 968 F.2d at 913.

AFFIRMED.