UNITED STATES of America, Plaintiff–Appellee,

v.

Bennie Dean HERRING, Billy Clyde Herring, Ronald Mills, and Dee Dee Bell, Defendants–Appellants.

No. 90–7280.

United States Court of Appeals, Eleventh Circuit.

June 21, 1993.

this matter pursuant to 28 U.S.C. § 46(c).

W. Terry Travis, George Beck, Dennis R. Pierson, Montgomery, AL, for defendants-appellants.

James E. Wilson, U.S. Atty., Charles R. Niven, Asst. U.S. Atty., Montgomery, AL, for plaintiff-appellee.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, and CARNES, Circuit Judges, and CLARK*, Senior Circuit Judge.

ANDERSON, Circuit Judge:

The primary issue involved in this appeal is whether or not 18 U.S.C. § 2512(1)(b) of the Wiretap Act applies to the appellants' conduct. Appellants modified an electronic device known as a VideoCipher II (VC II). The VC II deciphers or unscrambles satellite television signals, and can be purchased readily and legitimately. Many satellite television signals are scrambled by the television programmer. In order to receive such scrambled satellite television signals, the ultimate consumer must have not only a dish, a receiver or converter, and a television set, but must also have a VC II, the primary function of which is to decipher scrambled television signals. Television programmers scramble satellite television signals in two manners, "soft scrambling" and "hard scrambling." The VC II, which can be purchased legitimately over the counter, unscrambles signals which are "soft scrambled." This is contemplated and expected by television programmers, and all parties agree that this process violates no law. In addition to "soft scrambled" signals, certain pay-television programmers "hard scramble" satellite television signals. The legitimate VC II will

---

* Senior U.S. Circuit Judge Clark has elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

unscramble such "hard scrambled" signals only when the ultimate consumer subscribes to and pays for the particular pay-television channel. Appellants in this case modified the legitimate VC II in order to enable the device to unscramble "hard scrambled" signals without subscribing to and paying for the programming. In other words, the modification enabled the device to receive pay-television programming without subscribing to and paying for it.

Appellants were convicted of conspiracy to manufacture or sell electronic devices, the design of which renders them primarily useful for the purpose of surreptitious interception of electronic communications. Some of the appellants were also convicted of substantive counts. On appeal, a panel of this court reversed the convictions. 933 F.2d 932 (11th Cir.1991). The panel opinion was vacated when the case was ordered to be reheard en banc. 977 F.2d 1435 (11th Cir. 1992). We now affirm. We discuss only appellants' primary claim that 18 U.S.C. § 2512(1)(b) of the Wiretap Act does not apply to appellants' conduct of modifying the device as described above and selling it. The other issues raised by appellants on appeal are without merit and warrant no discussion.

## ANALYSIS

The relevant provisions of the Wiretap Act were substantially amended in 1986. As amended, 18 U.S.C. § 2512(1)(b) provides in relevant part:

§ 2512. Manufacture, distribution, possession, and advertising of wire, oral, or electronic communication intercepting devices prohibited

(1) Except as otherwise specifically provided in this chapter, any person who intentionally—

.    .    .    .    .

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications . . .

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

We conclude that appellants' conduct in this case falls within the plain meaning of the statute. We discuss in turn each significant phrase of the statute. It is clear that the modified VC II constitutes an "electronic device"; we do not understand appellants to argue otherwise.

■ We also readily conclude that the modified VC II accomplishes a "surreptitious interception." The statute defines the term "intercept" as follows:

"[I]ntercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.

18 U.S.C. § 2510(4). We reject appellants' argument that only the dish accomplishes any interception. It is clear that it is the modified VC II which unscrambles the scrambled television signal and thus "acquires" the "content" of the pay-television signal within the meaning of the statutory definition. *Accord. United States v. Splawn,* 982 F.2d 414 (10th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 2365, 124 L.Ed.2d 271 (1993); *United States v. Shriver,* 989 F.2d 898, 903 (7th Cir.1992); *United States v. Lande,* 968 F.2d 907, 909 (9th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1299, 122 L.Ed.2d 689 (1993).

■ Although the term "surreptitious" is not defined in the statute itself, its dictionary definition is well established: secret and unauthorized; clandestine; action by stealth or secretly.[1] It is clear that this device operates surreptitiously, that is, without authority, secretly, and clandestinely. It is clear that the device was designed to intercept satellite television signals without detection by the programmers of pay-television. *Accord United States v. Harrell,* 983 F.2d 36 (5th Cir.1993); *Splawn,* 982 F.2d at 416–17; *Shriver,* 989 F.2d at 903; *United States v. Davis,* 978 F.2d 415, 419 (8th Cir.1992); *Lande,* 968 F.2d at 910.

■ Appellants argue that the interception involved in this case does not constitute the interception of "electronic communica-

---

1. *Shorter Oxford English Dictionary* 2092 (3d ed. 1959).

tions" as contemplated in the statute. Appellants argue that the Wiretap Act applies only to person-to-person communications where there is a reasonable expectation of privacy. In similar vein, appellants argue that the Communications Act, 47 U.S.C. § 605(a), should apply to the exclusion of the Wiretap Act, because the Communications Act focuses particularly on radio and television transmissions.[2] We reject appellants' argument for several reasons. The statute specifically defines the term "electronic communications"; the definition is very broad and the instant situation falls easily within the definition. Subject to specific exceptions which are not applicable here, the statute defines the term "electronic communication" as follows:

"[E]lectronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce ...

18 U.S.C. § 2510(12). In light of the breadth of the foregoing definition, we conclude that the television programming at issue in this case falls within the plain meaning of the definition of "electronic communications."

In addition, at least three other sections of the statute also make it clear that Congress contemplated that the Wiretap Act, as amended in 1986, would apply to the interception of television programming. For example, § 2511(4)(c) provides in relevant part:

Conduct otherwise an offense under this subsection that consists of or relates to the interception of a satellite transmission that is not encrypted or scrambled and that is transmitted—

(i) to a broadcasting station for purposes of retransmission to the general public;

.    .    .    .    .

is not an offense under this subsection unless the conduct is for the purposes of direct or indirect commercial advantage or private financial gain.

18 U.S.C. § 2511(4)(c). This section exempts from the coverage of the Wiretap Act the interception of "network feeds," but only if the interception is not for commercial advantage or private financial gain. Thus, Congress clearly contemplated that the interception of television programming would be covered. To the same effect, see 18 U.S.C. § 2511(5) which reduces the penalty for conduct involving the interception of "a private satellite video communication that is not scrambled or encrypted [when] the conduct in violation of this chapter is the private viewing of that communication and is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain."

Finally, in 18 U.S.C. § 2511(2)(g)[3] Congress did not expressly exempt all activity which is covered by 47 U.S.C. § 605(a) of the Communications Act from the coverage of the Wiretap Act, but rather excluded *only* the specific activity which is legalized under 47 U.S.C. § 605(b), i.e., the "private viewing" exemption under the Communications Act. In other words, Congress did not exclude all interceptions of "satellite cable programming" from the coverage of the Wiretap Act, but rather only that activity which qualifies under the specifically defined "private viewing" exemption. In contrast to this limited exclusion, the immediately preceding subsection of the Wiretap Act excluded *all* conduct covered by another provision of the Communications Act, namely, 47 U.S.C. § 553, which

---

2. Both parties agree that appellants' conduct would be in violation of 47 U.S.C. § 605(a) of the Communications Act. However, appellants were not charged under that statute.

3. 18 U.S.C. § 2511(2)(g) provides in relevant part:
 (g) It shall not be unlawful under this chapter ... for any person—

.    .    .    .    .

 (iii) to engage in any conduct which—

(I) is prohibited by section 633 of the Communications Act of 1934 [47 U.S.C. § 553 which prohibits the unauthorized reception of cable television]; or
 (II) is excepted from the application of section 705(a) of the Communications Act of 1934 [47 U.S.C. § 605(a)] by section 705(b) of that Act [47 U.S.C. § 605(b)].

prohibits the unauthorized reception of cable television.

Thus, 18 U.S.C. § 2511(4)(c), 18 U.S.C. § 2511(5), and 18 U.S.C. § 2511(2)(g) all clearly indicate that Congress contemplated that the interception of satellite television programming would be covered under the Wiretap Act. For that reason, and because the conduct at issue here falls within the plain meaning of the statutory definition of "electronic communications," we reject appellants' argument that the conduct at issue implicates only the Communications Act; we reject the argument that appellants' conduct does not involve the interception of "electronic communications" within the meaning of the Wiretap Act.[4]  *Accord United States v. Splawn*, 982 F.2d 414; *United States v. Shriver*, 989 F.2d 898; *United States v. Davis*, 978 F.2d 415.

■ Appellants' final and principal argument on appeal is that the government has not proven a violation of § 2512(1)(b) of the Wiretap Act, because the government failed to prove that appellants knew or had reason to know that the design of the modified device rendered it primarily useful for the purpose of surreptitious interception of electronic communications. It is clear from our previous discussion that appellants' activity falls readily within the meaning of "surreptitious interception" of "electronic communications." We focus now on whether appellants knew or had reason to know that the design of the modified devices rendered them primarily useful for this purpose. This is a question of fact. *Shriver*, 989 F.2d at 906; *United States v. Schweihs*, 569 F.2d 965 (5th Cir.1978).[5]  Therefore, the issue before us is whether or not the government adduced sufficient evidence so that a reasonable jury could conclude beyond a reasonable doubt that appellants knew or had reason to know that the design of the modified devices rendered them primarily useful for the purpose

of surreptitious interception of electronic communications.

Appellants argue that there were significant legitimate uses for the modified device. Appellants argue that the modified device retained certain of the legitimate uses of the legitimate VC II: to enhance the picture quality; to block out certain programs (e.g., any movies with a rating other than PG); and to unscramble "soft scrambled" satellite television signals. As noted above, all parties agree that the process of unscrambling "soft scrambled" signals is a legitimate use. Appellants argue that at the relevant time there were a greater number of channels available to a satellite television consumer which were merely "soft scrambled," as opposed to the number of channels which were "hard scrambled;" only the pay-television channels were "hard scrambled." Indeed, an expert witness called by the defense testified that the modification made by appellants did not alter the design of the legitimate VC II, and thus did not render the design primarily useful for the purpose of surreptitious interception of electronic communications.

On the other hand, the expert witness called by the government described in detail how each of the devices in evidence was modified by appellants. He testified that each device, as modified, would have enabled the satellite television consumer to receive pay-television channels without subscribing to or paying for them. Although acknowledging the above-mentioned legitimate uses which the modified device could still perform, the government witness gave his expert opinion that the design of the modified device rendered it primarily useful for the purpose of the surreptitious interception of electronic communications. Moreover, the appellants' own expert witness, on cross-examination, testified that one of the modified devices in evidence was primarily useful for the surreptitious interception of electronic communica-

---

4. The overlapping coverage of the Wiretap Act and the Communications Act presents no problem. In such a case, the prosecution has the right to select the statute under which the indictment will be brought. *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *United States v. Davis*, 978 F.2d 415, 420 (8th Cir.1992); *United States v. Lande*, 968 F.2d

907, 912–13 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1299, 122 L.Ed.2d 689 (1993).

5. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

tions. Because of this contradictory testimony and because of the testimony of the government expert, a reasonable jury might well have discounted the defense expert's prior testimony. Other evidence established that, while appellants sold both legitimate VC II's and modified VC II's, appellants charged a significantly higher price for the modified devices.

Our careful review of the record persuades us that a reasonable jury could conclude that the government did prove beyond a reasonable doubt that appellants knew or had reason to know that the design of the modified devices rendered them primarily useful for the purpose of the surreptitious interception of electronic communications. In addition to the testimony of the expert witnesses, it is clear that the distinctive feature of the modified devices' design was the ability to unscramble "hard scrambled" signals and thus to receive pay-television without subscribing to and paying for it. Although the modified device retained many of the legitimate uses of the legitimate VC II,[6] the distinctive feature of the modified design involved the surreptitious interception of electronic communications. Because of this distinctive feature, consumers were apparently willing to pay a significantly higher price for the modified device as compared to a legitimate VC II. Based upon all the facts and circumstances of this case, we conclude that a reasonable jury could find beyond a reasonable doubt that appellants knew or had reason to know[7] that the design of the modified devices at issue here rendered them primarily useful for the

purpose of surreptitious interception of electronic communications.

The conclusions we reach in this case are in harmony with virtually every circuit court of appeals which has addressed these issues. *See United States v. One Macom Video Cipher II,* 985 F.2d 258 (1993); *United States v. Harrell,* 983 F.2d 36 (5th Cir.1993); *United States v. Splawn,* 982 F.2d 414 (10th Cir.1992) (en banc), *cert. denied,* — U.S. —, 113 S.Ct. 2365, 124 L.Ed.2d 271 (1993); *United States v. Shriver,* 989 F.2d 898 (7th Cir.1992); *United States v. Davis,* 978 F.2d 415 (8th Cir.1992); *United States v. Lande,* 968 F.2d 907 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1299, 122 L.Ed.2d 689 (1993).

## CONCLUSION

For the foregoing reasons, we conclude that appellants' conduct violates the plain meaning of the language of 18 U.S.C. § 2512(1)(b).[8] Accordingly, the judgment of the district court is

**AFFIRMED.**

---

**6.** While the modified devices did retain many of the legitimate uses of the legitimate VC II, it is obvious that a customer interested only in legitimate uses would much prefer the legitimate VC II. Because of the modification, it is probable that an owner of a modified device could not subscribe to pay-television channels, thus eliminating that legitimate use. Also, because the modifications were apparent upon inspection of the device, an owner could not send the device to the manufacturer for repair without fear of detection. *See United States v. Splawn,* 982 F.2d 414 (10th Cir.1992) (en banc), *cert. denied,* — U.S. —, 113 S.Ct. 2365, 124 L.Ed.2d 271 (1993); *United States v. Davis,* 978 F.2d 415 (8th Cir.1992). Thus, as between the two competing designs, a jury could reasonably conclude that the design of the legitimate VC II rendered it primarily useful for legitimate purposes, while the design of the modified device rendered it

primarily useful for the purpose of surreptitious interception of electronic communications.

**7.** There was ample evidence to support the jury's conclusion with respect to the knowledge element. Further discussion of that element is not warranted.

**8.** Because the appellants' conduct is prohibited under the plain meaning of the language of the statute, we need not delve into the legislative history. However, we note with approval the discussion in several opinions of other circuit courts of appeal. That discussion indicates that the legislative history actually supports the interpretation we adopt today. *See One Macom Video Cipher II,* 985 F.2d 258; *Splawn,* 982 F.2d at 417–18; *Shriver,* 989 F.2d at 903–04; *Davis,* 978 F.2d at 418; *Lande,* 968 F.2d at 911–912.