UNITED STATES of America,
Plaintiff–Appellee,

v.

Joseph Lonnie HOWARD, Wayne Eric
Howard, Joshua Aaron Howard,
Defendants–Appellants.

No. 92–9031.

United States Court of Appeals,
Eleventh Circuit.

Feb. 10, 1994.

Herbert V. Larson, Jr., New Orleans, LA, for defendants-appellants.

Carlton R. Bourne, Jr., Asst. U.S. Atty., Savannah, GA, for plaintiff-appellee.

Before HATCHETT and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

The defendants were convicted on three counts of assisting in the unauthorized decryption of satellite cable programming in violation of 47 U.S.C. § 605(e)(4). They appeal their convictions, alleging an impermissible amendment of the indictment and insufficiency of the evidence. They also challenge their sentences as contrary to the letter and policy of the Sentencing Guidelines. We affirm.

Joseph Howard was the owner of Waycross Communications (Waycross), a business he operated with his three sons, Wayne, Joshua, and Christopher. Waycross serviced and sold electronic equipment, including satellite dishes and related components. In 1989, the Federal Bureau of Investigation learned that the Howards were illegally modifying electronic descrambling, or decryption, devices in a way that permitted the users to unscramble encrypted satellite transmissions of subscription television programming without paying the required fees. The F.B.I. conducted an investigation, and on three occasions between July 1990 and March 1991, the Howards modified such devices for undercover agents. Each of the Howards was subsequently indicted on three counts of manufacturing, modifying, selling, and distributing electronic devices that they knew or had reason to know were "primarily of assistance in the unauthorized decryption of satellite cable programming" in violation of 47 U.S.C. § 605(e)(4).[1]

Following a jury trial, Joseph, Wayne, and Joshua Howard were convicted on all counts. One son, Christopher Howard, was acquitted. Joseph Howard, the father, was sentenced to 36 months in prison and fined $15,000. Joshua and Wayne Howard each received a prison sentence of 30 months and Wayne was fined $5,000. This appeal was filed on behalf of all three convicted defendants.

*Constructive Amendment of Indictment*

The primary issue on appeal is whether the offenses charged in the indictment apply to the defendants' conduct that the Government proved at trial. Although the defendants concede that they violated § 605(e)(4), they contend that the Government charged them under the wrong part of that statute. Under the indictment as framed, the Government had to show that the devices they modified were intended to assist in the unauthorized decryption of "satellite cable programming." According to the defendants, however, the Government proved only that the devices were intended for "activit[ies] prohibited by subsection (a) of this section,"[2] a separate offense under § 605(e)(4). The defendants contend that they are therefore entitled to a new trial because the Government constructively amended the indictment by

---

**1.** Section 605(e)(4) provides as follows:

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both.

**2.** Section 605(a) provides, in part, as follows:

No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

proving offenses that were not alleged therein.

◼ The defendants' argument rests on the statutory definition of the term "satellite cable programming." Section 605(d)(1) provides that the term means "video programming which is transmitted via satellite and which is primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers." The defendants claim that their conduct did not involve "satellite cable programming" because the equipment they modified permitted the decryption of satellite signals intended, not for receipt and retransmission by cable operators, but rather for direct receipt and "private viewing" by individuals with their own satellite dishes. The crux of their argument, in other words, is that video programming transmitted by satellite is not "satellite cable programming" unless it is intended for commercial redistribution, and not for "private viewing." The defendants thus contend that, absent evidence showing the modified descramblers were intended for use in a commercial context, the Government did not prove the charges in the indictment.

The defendants' argument requires us to determine whether the term "satellite cable programming" refers to transmissions intended solely for receipt by cable operators, as opposed to private individuals. This issue is easily resolved by reference to the statute's plain language. Section 605(d)(4) defines the term "private viewing" as "the viewing for private use in an individual's dwelling unit by means of equipment, owned or operated by such individual, capable of receiving satellite cable programming directly from a satellite." This definition makes clear that, contrary to the defendants' argument, the concepts of "satellite cable programming" and "private viewing" are not mutually exclusive. Although "satellite cable programming" may be *primarily* intended for direct receipt by cable operators, Congress plainly contemplated that such programming would also be received for private use by individuals with the necessary equipment. *See United States v. Harrell,* 983 F.2d 36, 39 (5th Cir.1993); *United States v. Scott,* 783 F.Supp. 280, 282 (N.D.Miss.1992), *aff'd without op.,* 986 F.2d 1418 (5th Cir.1993). In light of the statute's unambiguous language, the defendants were, as charged, involved in the unauthorized decryption of "satellite cable programming."

*Insufficiency of Evidence*

◼ The defendants argue that there is insufficient evidence to support several of the convictions. Their failure to move for judgment of acquittal at trial limits this Court's review to determining whether affirmance of the convictions would cause a "manifest miscarriage of justice." *United States v. Ethridge,* 948 F.2d 1215, 1217 n. 2 (11th Cir. 1991). The defendants' specific complaint is that the evidence failed to show they were each present and participating during all three of the violations alleged. In the absence of a conspiracy or an aiding and abetting charge, they argue, the Government was required to prove that each defendant was involved as a principal in each violation.

◼ This argument is meritless. Aiding and abetting "is an alternative charge in every count, whether explicit or implicit, and the rule is well-established ... that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *United States v. Bullock,* 451 F.2d 884, 888 (5th Cir.1971). To support a conviction for aiding and abetting an offense, the evidence must simply show that "the defendant was associated with the criminal venture, participated in it as something he wished to bring about, and sought by his action to make it succeed." *United States v. Hewitt,* 663 F.2d 1381, 1385 (11th Cir.1981) (quoting *United States v. Martinez,* 555 F.2d 1269, 1272 (5th Cir.1977)). The evidence need not show that the defendant participated in every phase of the venture. *Id.*

◼ In this case, the jury was properly instructed on aiding and abetting, and the evidence plainly established each defendant's active participation in and contribution to the activity involving the sale of illegal decryption devices. Because it was not necessary to prove that every defendant was present or played a hands-on role during each of the violations, the convictions must stand.

*Sentences*

The defendants raise two objections to the sentences imposed by the district court. *First,* the defendants challenge the district court's upward adjustment of their sentences under U.S.S.G. § 2B5.3, the guideline applicable to violations of 47 U.S.C. § 605. Section 2B5.3(b)(1) provides that where the "retail value of the infringing items" exceeds $2,000, the base offense level should be increased in accordance with the table in § 2F1.1 (Fraud and Deceit). The district court concluded that the infringing items in this case were the pirated programs, and that the retail value of those programs, based on average subscription prices, exceeded $800,000. Accordingly, the court used the table in § 2F1.1 to increase each defendant's offense level by eleven.

The defendants contend that the court erred by focusing on the retail value of the pirated programming, instead of the retail value of the modified descramblers. We need not address this argument, however, because it appears that even using the defendants' method of calculating retail value, the sentences would be the same. The defendants' argument is premised on their mistaken belief that the district court increased their offense levels by 12, which would require that the retail value of the infringing items exceed $1.5 million. The court actually increased the offense level by only 11, however, based on a retail value exceeding $800,000. In light of the evidence showing that the defendants modified 9,000 units and generally charged between $150 and $200 per unit, the defendants cannot plausibly contend that the retail value of the descramblers was below $800,000. The defendants have not shown that a recalculation of retail value along the lines they suggest would reduce their offense levels.

*Second,* the defendants argue that because their conduct could have been prosecuted under 18 U.S.C. § 2512, a part of the Wiretap Act that overlaps § 605(e)(4), the district court should have imposed the lighter sentence they would have received under the guideline applicable to that statute. The court's failure to do so, they contend, improperly permitted the prosecutor to thwart the Sentencing Guidelines' policy of avoiding unwarranted sentence disparities among similarly situated defendants.

The defendants' argument ignores the well-established rule that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder,* 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979). Moreover, in exercising that discretion, the prosecutor may properly consider the penalties available upon conviction. *Id.* at 125, 99 S.Ct. at 2205. The defendants' contention that the Sentencing Guidelines were intended to limit prosecutorial discretion in this regard has been rejected repeatedly. *United States v. Foote,* 898 F.2d 659, 666 (8th Cir.), *cert. denied,* 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990); *United States v. Stanley,* 928 F.2d 575, 581 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991); *see also United States v. Herring,* 993 F.2d 784, 788 n. 4 (11th Cir.) (en banc), *cert. denied,* — U.S. —, 114 S.Ct. 347, 126 L.Ed.2d 312 (1993) (stating that the prosecutor has the right to select between 18 U.S.C. § 2512 or 47 U.S.C. § 605 when bringing charges for communications violations). There was no error in the sentences imposed.

AFFIRMED.