PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DIRECTV INCORPORATED,
　　　　　*Plaintiff-Appellant,*

v.

DENNIS NICHOLAS,
　　　　　*Defendant-Appellee.*

No. 04-1845

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-03-697-5-BO)

Argued: March 16, 2005

Decided: April 13, 2005

Before WIDENER and SHEDD, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Senior Judge Hamilton
wrote the opinion, in which Judge Widener and Judge Shedd joined.

_____

**COUNSEL**

**ARGUED:** Howard Robert Rubin, SONNENSCHEIN, NATH &
ROSENTHAL, L.L.P., Washington, D.C., for Appellant. Ray Martin
Kline, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Jacqueline
Sadker, SONNENSCHEIN, NATH & ROSENTHAL, L.L.P., Wash-
ington, D.C., for Appellant.

**OPINION**

HAMILTON, Senior Circuit Judge:

Using a "pirate access device," Dennis Nicholas allegedly intercepted the encrypted satellite transmissions of DIRECTV, a company that provides satellite television broadcasts. DIRECTV then filed this action seeking recovery under numerous laws, including 18 U.S.C. § 2511 and 18 U.S.C. § 2520.[1] In granting Nicholas' motion to dismiss, the district court held that DIRECTV could not maintain a civil action against Nicholas for his alleged interception of DIRECTV's encrypted transmissions. Because we conclude that the plain language of 18 U.S.C. § 2511 and 18 U.S.C. § 2520 allows for such an action to proceed, we vacate the district court's judgment and remand for further proceedings.

I

DIRECTV is a California-based company in the business of distributing satellite television broadcasts throughout the United States. DIRECTV relays digital transmissions from within the United States to satellites, which broadcast the transmissions back to Earth. DIRECTV's satellite programming is received through the use of a fixed outdoor satellite dish, which connects by cable to an indoor satellite receiver, which is then connected by a cable to a conventional television set.

To prevent the unauthorized reception and use of DIRECTV's broadcasts by individuals who have not paid for DIRECTV's service, DIRECTV encrypts, *i.e.*, digitally scrambles, its transmissions while the transmissions travel from the satellites to the indoor satellite receiver. Once the transmissions are in the receiver, an access card in the receiver decrypts the transmissions for viewing on the television

---

[1]Both 18 U.S.C. § 2511 and 18 U.S.C. § 2520 are part of the federal wiretap laws, which are codified at 18 U.S.C. §§ 2510-2522. *See* Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 212, as amended and retitled by the Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1851.

set. DIRECTV activates an access card by giving it the information needed to decrypt DIRECTV's programming.

Despite the encryption technology used by DIRECTV to protect its transmissions, individuals within the United States and surrounding foreign countries have been involved in the development of devices (commonly referred to as "pirate access devices") that can surreptiously steal DIRECTV's transmissions. These pirate access devices have enabled individuals to access DIRECTV's satellite programming without proper payment to the company.

On September 12, 2003, DIRECTV filed a five-count complaint against Nicholas in the United States District Court for the Eastern District of North Carolina, in response to which Nicholas filed a motion to dismiss. In Count Two, the only count relevant to this appeal, DIRECTV alleged that it was entitled to damages under 18 U.S.C. § 2511 and 18 U.S.C. § 2520 because Nicholas illegally intercepted DIRECTV's encrypted transmissions.[2]

In an order dated January 20, 2004, the district court dismissed Count Two of Nicholas' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and later denied DIRECTV's motion for reconsideration. DIRECTV filed a timely notice of appeal.

II

The parties agree that the propriety of the district court's Rule 12(b)(6) dismissal turns on whether, under 18 U.S.C. § 2511 and 18 U.S.C. § 2520, DIRECTV can maintain a civil action against Nicholas for his alleged interception of DIRECTV's encrypted transmissions.

When interpreting statutes, we start with the plain language. *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not

---

[2]The remaining counts were dismissed for various reasons and are not at issue on appeal.

absurd—is to enforce it according to its terms." *Id.* (citation and internal quotation marks omitted). In interpreting the plain language of a statute, "[w]e give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (citation and internal quotation marks omitted.) We also abide by "the cardinal rule that statutory language must be read in context [because] a phrase gathers meaning from the words around it." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004) (citation and internal quotation marks omitted).

Under 18 U.S.C. § 2511(1)(a), it is unlawful to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication. *Id.* § 2511(1)(a). "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4). An "electronic, mechanical, or other device" is defined as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication." *Id.* § 2510(5). Finally, the term "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." *Id.* § 2510(12). A violation of § 2511(1)(a) can result in a fine and/or up to five years' imprisonment. *Id.* § 2511(4)(a).

There appears to be no dispute that the government could criminally proceed against Nicholas for his alleged conduct. It is undisputed that satellite television transmissions constitute electronic communications under § 2510(12). *See United States v. Splawn*, 982 F.2d 414, 416 (10th Cir. 1992) (*en banc*) (collecting cases). Moreover, the act of using a device to decrypt encrypted satellite television transmissions unquestionably falls under the definition of "interception" as defined in § 2510(4). *See United States v. Herring*, 993 F.2d 784, 786 (11th Cir. 1993) (*en banc*) (collecting cases). Thus, under the plain language of the statutes, using a pirate access device to intercept the encrypted satellite transmissions of a satellite television provider constitutes a violation of § 2511(1)(a).

   The rub in this case is whether an individual victim of a § 2511(1) violation can bring a civil action against a § 2511(1) violator. Section 2520(a) provides:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a). Subsection (b) states that "appropriate" relief includes: "(1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c) and punitive damages in appropriate cases; and (3) a reasonable attorney's fee and other litigation costs reasonably incurred." *Id.* § 2520(b). Subsection (c) provides two different methods for computing damages in § 2520 actions. *Cf. Nalley v. Nalley*, 53 F.3d 649, 651 (4th Cir. 1995) (noting that § 2520(c) "provides two different means of computing damages, depending on the type of [the] underlying violation"). The first method is set forth in subsection (c)(1) and states:

> (1)   In an action under this section, if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the court shall assess damages as follows:

>> (A)   If the person who engaged in that conduct has not previously been enjoined under section 2511(5) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $50 and not more than $500.

> (B)   If, on one prior occasion, the person who engaged in that conduct has been enjoined under section 2511(5) or has been found liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1000.

18 U.S.C. § 2520(c)(1). The second method for computing damages is set forth in subsection (c)(2) and states:

> (2)   In any other action under this section, the court may assess as damages whichever is the greater of—

> > (A)   the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

> > (B)   statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

*Id.* § 2520(c)(2).

In our view, the plain language of the statutes decidedly favors DIRECTV and provides it a cause of action. As evinced by the plain language of the section, § 2520(c) provides two methods of computing damages. One method is applicable to interceptions of transmissions that are not encrypted. The other method is applicable to all other actions, including those that intercept encrypted satellite transmissions. Because DIRECTV alleges that Nicholas intercepted its encrypted satellite transmissions, DIRECTV may maintain its private cause of action against Nicholas.

Our reading of the statutes at issue is consistent with our decision in *Flowers v. Tandy Corp.*, 773 F.2d 585 (4th Cir. 1985). In explaining why a private right of action did not exist under the old version of § 2520 for a § 2512 violation, we noted:

> Though § 2520 provides an action for any person whose communication is "intercepted, disclosed or used in viola-

tion of this chapter," . . . the language defining the class of persons liable is not comparably broad. The statute expressly limits those against whom the private action lies to the person who "intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications." This language tracks very closely the criminal offenses set out in § 2511, whereas the criminal offenses set out in § 2512 are defined in such terms as "manufacture," "assemble," "possess," and "sell." The express language of § 2520 is therefore not susceptible to a construction which would provide a cause of action against one who manufactures or sells a device in violation of § 2512 but does not engage in conduct violative of § 2511.

\* \* \*

Though any criminal statute is in part enacted for the benefit of the victims of the crime, . . . § 2512 appears to have been designed for benefitting the public as a whole by removing such devices from the market. Section 2511, which makes criminal the actual practice of wiretapping, is more properly aimed at protecting the particular victim, and indeed, Congress recognized that purpose by expressly providing in § 2520 a private cause of action for victims of acts made criminal in § 2511.

*Id.* at 588-89.

Moreover, Congress' decision to provide the two methods of computing damages is eminently reasonable. Subsection (c)(1) is designed to limit damages for less serious offenders, those who intercept non-encrypted transmissions. The provision authorizes damages ranging between $50 and $1,000 for first-time or second-time offenders who do not act with a tortious or illegal purpose or for commercial gain and whose interception involves only transmissions that are non-encrypted. 18 U.S.C. § 2520(c)(1)(A),(B). Subsection (c)(2), on the other hand, provides greater damages—the sum of actual damages and profits made by the violator or statutory damages ranging from $100 a day to $10,000—for violators who engage in more egregious conduct, including intercepting encrypted transmissions. *Id.*

§ 2520(c)(2)(A),(B). Congress reasonably concluded that violators who intercept encrypted transmissions, requiring greater technical savvy and efforts, are to face greater punishments than those who take fewer measures in order to intercept nonencrypted transmissions. In short, it simply is fair to say that Congress created the lesser penalties of § 2520(c)(1) to serve as an exception to the general rule for damages under § 2520(c)(2). *Cf. DIRECTV v. Brown*, 371 F.3d 814, 816-17 (11th Cir. 2004) (assuming *sub silentio* that the general rule for damages, as provided in subsection (c)(2) of § 2520, includes damages for the interception of encrypted satellite transmissions in violation of § 2511).[3]

In its opinion, the district court erroneously held that § 2520(c) only applied to nonencrypted communications. In so holding, the court only examined § 2520(c)(1) and did not discuss that section's relationship with § 2520(c)(2). Of course, the error in the court's analysis is obvious—it was not permitted to ignore § 2520(c)(2) altogether. Indeed, under the plain language of the statutes, there is nothing to indicate that § 2511 excludes from its application intentional interceptions of encrypted satellite transmissions, as opposed to nonencrypted satellite transmissions. Moreover, there is nothing in the plain language of § 2520 to indicate that the interception of encrypted

---

[3]Senate Report No. 99-541 makes the point pellucid:

Proposed subsection 2520(c) provides a method for the computation of damages. The general rule is set out in paragraph (2) of subsection (c). The court may assess damages consisting of whichever is the greater of (A) the sum of the plaintiff's actual damages and any profits the violator made as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day or $10,000. An exception from that general rule is set out in proposed paragraph (1) of subsection 2520(c). This exception applies if the violation consists of the private or home viewing of an unencrypted or unscrambled private satellite video communication or if the communication is an unencrypted or unscrambled radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the FCC rules, and the conduct is not for one of the enumerated bad purposes.

S. Rep. No. 99-541, at 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3581.

satellite transmissions would not fall under the general damages provisions of subsection (c)(2), which provides for certain specified damages "in all other cases" (*i.e.*, in all cases of § 2511 violations except those specifically listed in subsection (c)(1)).

In this case, the language of the statutes at issue is plain and we perceive no absurdity in our interpretation or application. Accordingly, we hold that DIRECTV can maintain a civil action under 18 U.S.C. § 2511 and 18 U.S.C. § 2520 against Nicholas for his alleged interception of DIRECTV's encrypted satellite transmissions.

### III

For the reasons stated herein, the judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

*VACATED AND REMANDED*